James H. Cossitt (Mont. # 4773)
JAMES H COSSITT  PC
PO Box 1889
Kalispell MT  59903-1889
Tel:  406-752-5616
Email: jhc@cossittlaw.com
ATTORNEY FOR PLAINTIFFS

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In Re:<br><br>  JOHN HENRY SCHNEIDER,<br><br>  Debtor. | Case #14-61357-7 |
| JOSEPH V. WOMACK, as CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE  OF JOHN HENRY SCHNEIDER,<br><br>     Plaintiff,<br><br>vs.<br><br>JOHN HENRY SCHNEIDER and MICHELLE R. SCHNEIDER,<br>     Defendants. | Adversary # 17-21<br><br>**NOTICE OF HEARING:**<br><br>Date: 10/6/17 @  1330  (1:30) PM<br>Location:   Bankruptcy Courtroom<br>James F. Battin Courthouse, 5th floor<br>2601  2nd Ave.  N, Billings MT   59701 |

# DEFENDANTS' OPPOSITION TO
# MOTION TO DISMISS COUNTERCLAIM

NOW COME Defendants John Henry Schneider (the "Debtor") and Michelle R. Schneider ("Michelle" and, with the Debtor, the "Defendants" or the "Schneiders"), and respond in opposition to the Motion to Dismiss Counterclaims and Brief in Support (the "Motion") (Dkt. #20) filed by plaintiff Joseph V. Womack, as Chapter 7 Trustee of the Debtor's estate (the "Trustee").

## INTRODUCTION

In this adversary proceeding, the Trustee seeks to enforce certain provisions of the Settlement Agreement and Release (the "Settlement Agreement") between the Trustee and the defendants in Adversary Proceeding No. 15-00015 ("AP 15-15"). The Defendants were among the defendants in AP 15-15, and were parties to the Settlement Agreement.

While relying on the Settlement Agreement to press claims against the Defendants, the Trustee has failed to take any steps to enforce the Settlement Agreement against Meridian Surgical Partners, LLC, and Meridian Surgical Partners-Montana, LLC ("Meridian"). In Adversary Proceeding No. 17-00016, the Schneiders and other plaintiffs asserted that Meridian is bound by, and has violated, the Settlement Agreement. Among other defenses, Meridian claimed that it is not bound by the Settlement Agreement because it was not a creditor of the Debtor at the time the Settlement Agreement was approved. Accordingly, Meridian has asserted in another forum the same claims the Trustee settled with the Schneiders and others in AP-15. The gravamen of the Schneiders' counterclaim in this action (the "Counterclaim") is that the Trustee's actions enabled Meridian to take this position and pursue these claims, to the Defendants' detriment.[1]

The Trustee seeks to dismiss the Defendants' Counterclaim as a threshold matter by relying on a bankruptcy trustee's "derived quasi-judicial immunity." The allegations of the Counterclaim raise questions as to three of the four factors that the Ninth Circuit

---

[1]     Adversary proceeding No. 17-00016 has been dismissed with prejudice pursuant to a stipulation between Meridian and the defendants in AP 15-15. The Defendants' agreement with Meridian was reached after the Counterclaim was filed.

requires this Court to examine in determining whether a trustee is sheltered by immunity.  What really is at issue in this case is a litigant's right to depend on the substantive terms of a settlement agreement reached with a bankruptcy trustee.  The Trustee's acts and omissions in this regard are those of a litigant, not a judicial officer.

The Trustee's attempt to dismiss the Counterclaim on the merits also must fail.  First, he asserts that the Defendants must resort to parol evidence in order to prove their claims.  The Trustee misapprehends this evidentiary rule, which only precludes introduction of parol evidence to *vary* the terms of a written agreement.  Here, the allegations of the Counterclaim to which the Trustee evidently refers are consistent with the terms of the Settlement Agreement, and illustrate the circumstances under which the agreement was made, a proper subject of inquiry excluded from the parol evidence rule.

Second, the Trustee claims that the Counterclaim does not allege the requisite elements of the various causes of action stated in the separate Counts.  His arguments in this regard selectively ignore or mischaracterize allegations that would allow this Court to draw the inference that the Trustee is liable for the misconduct asserted.

## LEGAL STANDARDS

This brief will demonstrate that the Counterclaim meets the legal standard for denial of the Motion.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *In re Wall*, No. AP 16-00050, 2017 WL 1157083, at *6 (Bankr. D. Mont. Mar. 24, 2017) (citations omitted).  For reasons discussed below, the Complaint establishes that the Trustee engaged in the conduct alleged and acted unlawfully in doing so.

## STATEMENT OF FACTS

This case has its genesis in AP 15-15. commenced by Trustee Joseph V. Womack (the "Trustee") in 2015.  The Debtor filed the underlying Chapter 7 cased on December 4, 2014.  Counterclaim ("CC"), ¶ 26.  The Trustee commenced AP 15-15  on May 22, 2015, and filed his First Amended Complaint on July 14, 2015.  *Id.*, ¶¶ 34, 35.

Count I sought substantive consolidation of the Debtor's case with Schneider Management, LLC ("Schneider Management"), Schneider Limited Partnership ("SLP"), and MedPort, LLC ("MedPort"), requesting that these three entities be consolidated into the underlying case, *nunc pro tunc* to the Debtor's petition date, that their property be deemed property of the bankruptcy estate, and that the Court specifically allow the Trustee to pursue against these entities "any and all claims of action belonging to [them], including but not limited to actions for recovery of fraudulent transfers . . . . on behalf of the estate."   CC, ¶ 36.

Count II asserted reverse piercing/alter ego claims against SLP, Schneider Management, Medport and BSC, requesting an order that the entities "are alter egos of Debtor," that their assets "are property of the bankruptcy estate available to Debtor's creditors," and that the Trustee "is entitled to pursue any and all claims of action belonging to [the entities], including but not limited to actions for recovery of fraudulent

transfers . . . on behalf of the estate." CC, ¶ 37.

The Trustee and defendants in AP 15-15 reached a settlement after a two-day settlement conference in February 2016. The Trustee filed a motion to approve that settlement in the main case as Doc. Nos. 216 and 220. Meridian objected (Doc. Nos. 226, 228). The Court entered a conditional order approving the settlement, which imposed conditions that the parties were unable to meet. The Debtor revoked his consent to the February 2016 settlement at Doc. No. 325. CC, ¶¶ 38, 39.

After additional negotiations, the parties in AP 15-15 reached the Settlement Agreement, which the Trustee filed in the main case with a motion to approve it (Doc. Nos. 340 and 340-1). Among other provisions of the Settlement Agreement were the following:

- The Trustee and the Estate shall retain Debtor's individual claims against Meridian. Without waiving any defenses that Trustee/Estate shall have, Trustee/Estate shall assume responsibility for settlement of all costs and fees determined to be attributable to Trustee's/Estate's retention of John Schneider's individual claims against Meridian in the Arbitration.

- The Trustee shall convey to Michelle Schneider or her designee any and all interest the estate might have or claim to have in Schneider LP and Schneider Management by way of a sale pursuant to 11 U.S.C. § 363(f).

- The Trustee shall abandon any and all interest, if any, in claims that the estate might have against:

    i. Claims against any third party professionals who prepared or advised the Debtor on any matter prior to the commencement of the bankruptcy case

    ii. Claims of Schneider LP, Schneider Management, Medport, BSC, NRNS, and the Children's Trusts.

    iii. Claims against Meridian held by any of the Schneider Parties

other than Debtor.

iv. Medport, NRNS, and BSC.

- The Parties stipulate that the causes of action asserted by the Trustee in AP 15 are all property of the bankruptcy estate, to the exclusion of any creditor, and shall request a finding of fact and conclusion of law to this effect by the court that approves this settlement. It shall be a condition precedent to this settlement that the court make such a finding and conclusion.

- The Trustee shall request an order of the court that authorizes and directs the trustee not to share with any other person or entity any work product with respect to this adversary proceeding or discuss any aspect of this adversary proceeding with any other person or entity, other than what is reasonably necessary to obtain court approval or to otherwise comply with this agreement or the trustee's duties as a chapter 7 panel trustee, or except as otherwise compelled pursuant to a court order or enforceable subpoena.

- Approval of Bankruptcy Court. . . . . . . All Parties agree that the Bankruptcy Court shall have sole and exclusive jurisdiction to enforce this Agreement."

CC., ¶ 40.

An order approving the Settlement Agreement (the "Order") entered in the main case on June 7, 2016 (Doc. # 426). The Order provides in part that "the causes of action asserted by the Trustee in AP 15-00015 are all property of the bankruptcy estate, to the exclusion of any creditor, and are deemed fully settled, on the merits, pursuant to this Order." It also provides that "the Trustee shall not share with any other person or entity any work product with respect to this AP 15-00015 or discuss any aspect of this adversary proceeding with any other person or entity, other than what is reasonably necessary to obtain court approval or to otherwise comply with Settlement Agreement and Release, or to comply with the Trustee's duties as a chapter 7 panel trustee, or

except as otherwise compelled pursuant to a court order  or enforceable subpoena.  CC., ¶ 40.

Before the Debtor filed the main case, the Debtor and Meridian had asserted claims against each other which were pending in a case before the American Arbitration Association (the "Arbitration").  CC, ¶ 25.  On April 7, 2015, Meridian filed a proof of claim in the amount of $3,000,000, based on its claims in the Arbitration.  *Id.*, ¶ 26. The Trustee and Meridian reached an agreement to settle Meridian's claims and other matters (the "Meridian Agreement"), which the Trustee filed in the main case with a motion for its approval (Doc. Nos. 342 and 342-1).  As the docket numbers suggest, and as this Court may take judicial notice, the Trustee filed these documents the same day he filed the motion to approve and Settlement Agreement in AP 15-15.

The Meridian Agreement referred specifically to the Trustee's Complaint in AP 15-15 and its request for substantive consolidation and reverse piercing/alter ego rulings.  Among other provisions, the Meridian Agreement provided that Meridian would withdraw its proof of claim and provided comprehensive releases of claims between Meridian and the estate in the Arbitration, as well as "[a]ny and all Pre-Petition claims."  The Meridian Agreement carved out from the release claims in the Arbitration "by or against Meridian or [SLP], Michelle Schneider or Schneider Management, LLC." CC, ¶¶ 31, 32.  The Meridian Agreement was approved (Doc. 384).  *Id.*, ¶ 30.  Meridian withdrew its proof of claim on June 11, 2016.  *Id.*, ¶ 33.

 On the same day the Settlement Agreement was approved in this Court, Meridian made a motion in the continuing Arbitration with SLP to Limit and Exclude Testimony, to Adopt Adverse Inferences, and for Sanctions against SLP.  Meridian

argued that the arbitrator should order that "Dr. Schneider and SLP are one and the same and SLP is the alter ego of Dr. Schneider." *Id.*, ¶ 45. The Arbitration between SLP and Meridian was held from June 15 to 24, 2016. *Id.*, ¶ 46. In the Interim Award, at the Conclusions of Law § C, ¶ 24, the arbitrator concluded that SLP is an alter ego of John Schneider and that Meridian's claims against SLP "are not barred by the [Settlement Agreement]." *Id.*, ¶ 47-48. Following entry of the Interim Award, Meridian has continued to assert claims in the Arbitration. *Id.*, ¶ 49.

Meridian claims the Settlement Agreement does not bind it, asserting that "by June 7 [2016, the date the Settlement Agreement was approved by this Court], Meridian was not a creditor of Dr. Schneider. That claim had been settled [and] Meridian withdrew its claim. . . . The Court's Order [approving the Settlement Agreement] had no effect on Meridian." CC, ¶ 50. Meridian also asserted, in a separate adversary proceeding, that Meridian "reserves the right to pursue" assets if it "subsequently discovers that SLP fraudulently pursued those assets." *Id.*, ¶ 51.

The Trustee filed a motion for shortened notice on approval of the Meridian Agreement. *Id.*, ¶ 65. He filed this motion the day after he filed the motions to approve the Settlement Agreement and the Meridian Agreement. The expedited grant of the Trustee's motion to approve that settlement enables Meridian to claim that it was not a "creditor" and was not bound by the Settlement Agreement.

## ARGUMENT

### *1.  The Trustee is not immune from suit in this adversary proceeding.*

The test for determining whether a Trustee is entitled to immunity from suit is well-settled in this Circuit.

> For derived quasi-judicial immunity to apply, the defendants must satisfy the following four elements: (1) their acts were within the scope of their authority; (2) the debtor had notice of their proposed acts; (3) they candidly disclosed their proposed acts to the bankruptcy court; and (4) the bankruptcy court approved their acts.

*In re Harris*, 590 F.3d 730, 742 (9th Cir. 2009).

Because these elements are stated in the conjunctive, the Trustee must satisfy all of them to succeed in dismissing the Counterclaim. The corollary is that failure to satisfy any one element is fatal to the Motion. The Trustee cannot satisfy the second, third or fourth elements.

The Trustee's assertion that negotiating settlements and seeking "the imprimatur of the Court in order to validate and assure the exercise of the trustee's delegated discretion" constitute "a classic example" of acts entitled to quasi-judicial immunity misses the point of the Counterclaim. The gravamen of the Counterclaim is that the Trustee's seeking shortened notice for approval of the Meridian Agreement negated protections the Defendants had bargained for in their Settlement Agreement.

Of critical relevance to the Counterclaim, the parties stipulated in the Settlement Agreement that "the causes of action asserted by the Trustee in [AP 15-a5] are all property of the bankruptcy estate, to the exclusion of any creditor." The Trustee's motion to approve the Settlement Agreement, of which this Court may take judicial notice, identified "three additional orders from the Court" that "the Settlement Agreement requires the Trustee to seek." These include "a finding of fact and conclusion

of law that 'the causes of action asserted by the Trustee are all property of the bankruptcy estate, to the exclusion of any creditor."   The motion identified this finding/conclusion as a "condition precedent to enforcement of the Settlement Agreement," as the Settlement Agreement itself required.

On the same day that he filed this Motion, the Trustee filed the motion to approve the Meridian Agreement, which provided among other things that Meridian would withdraw its proof of claim.  The very next day, he filed the motion to shorten notice for approval of the Meridian Agreement (Doc. No. 356).  If he had not yet drafted the motion for shortened notice when he filed the motions to approve the settlements, he must have known he planned to do so.  In any case, he did so before approval of the Settlement Agreement.  Thus, before he obtained the Order he promised to obtain in the Settlement Agreement, he had taken the action that allowed Meridian to claim exemption from the Order.

The Defendants allege that, by opening the door for Meridian, the Trustee breached his Settlement Agreement with the Defendants and committed a number of torts against them.  The Order approving the Settlement Agreement was supposed to protect them, but because of the timing of the approval of the Meridian Agreement, Meridian was able to argue that it did not.  The Defendants allege that they were damaged by the Trustee's acts and omissions.

The true nature of the Counterclaim negates three of the four *Harris* factors.  The Debtor (and Michelle and the other defendants in AP 15-15) did not have notice of the proposed acts of the Trustee because, when they entered into the Settlement Agreement, they did not know that the Trustee intended to seek shortened notice of the Meridian

Settlement.  The Trustee did not candidly disclose to the Court that the shortened notice created a loophole that undermined one of the key foundations of the Settlement Agreement.  Thus, in approving the shortened notice, the Court cannot be said to have approved this outcome.

Quasi-judicial immunity is "[a]n offshoot of judicial immunity."  Application of the doctrine is decided "on a case-by-case basis because not all 'of the [t]rustee's many functions are covered by absolute quasi-judicial immunity.'"  The doctrine is limited by the policy on which it is based.  Thus, "[t]he rule is that a trustee may be 'immune for actions that are functionally comparable to those of judges.'"  *In re Cedar Funding, Inc.*, 419 B.R. 807, 822 (9th Cir. BAP 2009).

A judge is not a party to a bankruptcy compromise.  The acts and omissions of the Trustee that form the basis for the Counterclaim are the acts and omissions of a party to the Settlement Agreement, who took action *apart from the agreement* to limit the rights the Defendants bargained for.

The Counterclaim alleges that the Trustee breached his "fiduciary duty to all creditors and parties in interest and the Schneider parties."  CC, ¶¶ 12, 67.  It is beyond question that a bankruptcy trustee owes a fiduciary duty to the estate, its creditors and other parties in interest.  "When a debtor retains an interest in estate assets—either by properly claiming exemptions or because surplus property will remain in the estate after all creditors have been compensated—the trustee owes a fiduciary duty to the debtor as well."  *Wisdom v. Gugino (In re Wisdom)*, 649 Fed.Appx. 583, 2016 WL 2731645, *3 (9th Cir. May 11, 2016).

The Debtor retained an interest in estate assets through the Settlement Agreement, which provided, *inter alia*, that he would receive $100,000.00 from the proceeds of the sale of his residence and that he and Michelle would retain, *inter alia*, their household goods and residence in California.  Settlement Agreement, ¶¶ 2(a), (l). Michelle was a creditor, who also received, *inter alia*, $100,000.00 from the sale of the Schneiders' home and $110,000.00 from a trust account.  Settlement Agreement, ¶¶ 2(a), (f).  She also was a party in interest, who acquired the estate's interest in SLP and Schneider Management pursuant to 11 U.S.C. § 363(f).  Settlement Agreement, ¶ 2(k).

Montana law establishes that the Trustee also owed a fiduciary duty to the Schneiders throughout the process that led to approval of the Settlement Agreement. Under Montana law, a fiduciary duty exists when there is a "special relationship" between the parties.  Although the existence of a fiduciary duty is a question of law, "a court may be required to make a fact-intensive inquiry" as to its existence.  *Gliko v. Permann*, 2006 MT 30, ¶ 24, 331 Mont. 112, 130 P.3d 155.

In *Morrow v. Bank of Am., N.A.*, 2014 MT 117, 375 Mont. 38, 324 P.3d 1167,  the Montana Supreme Court found that a bank owed a fiduciary duty to customers in the context of negotiations over the terms of a loan modification that potentially could have enabled the borrowers to avoid foreclosure.  The Morrows alleged that representatives of Bank of America advised them to default on their mortgage loan in order to qualify for a modification.   The Court found that this advice exceeded the bounds of an arm's length relationship and gave rise to a fiduciary duty on the part of the bank "to manage the modification process in a manner that would not cause the Morrows to suffer loss or injury by reason of its negligence."  *Morrow*, ¶¶ 37, 39.

The Trustee had no duty to settle AP 15-15 on the terms he did, but when he entered into the Settlement Agreement with them, promising to obtain an Order that would protect them from future litigation involving claims asserted in AP 15-15, he owed them a duty "to manage the [settlement] process in a manner that would not cause [them] to suffer loss of injury by reason of [his] negligence."  Although the two sides entered the negotiations as litigation opponents, they reached agreement to resolve their difference on two separate occasions.  Their interests aligned when they reached the first settlement agreement and the Trustee moved for Court approval.  When that deal fell through, they worked together to reach the Settlement Agreement.

A trustee is subject to liability for breach of fiduciary duty.  The Ninth Circuit found that the Trustee had a fiduciary duty to parties to an executory contract with the Debtor in *In re Cochise College Park, Inc.*, 703 F.2d 1339, 1357 (9th Cir. 1982). It is not a stretch to find that the Trustee in this case had a fiduciary duty to the Defendants, by analogy to *Cochise* and under the authorities cited above.  As a fiduciary, a trustee had "a duty . . . to exercise that measure of care and diligence that an ordinarily prudent person under similar circumstances would exercise. . . .  [H]e is subject to personal liability for not only intentional but also negligent violations of duties impose upon him by law."  *Id.* These are precisely the kinds of violation of duty alleged in the Counterclaim, as developed further in the third section of this brief, which examines the Counterclaim count-by-count.

The Trustee "bears the burden of establishing that [quasi-judicial] immunity is justified."  *Cedar Funding*, 419 B.R. at 822.  He has failed to meet this burden.  The Motion to dismiss on grounds of quasi-judicial immunity should be denied.

### 2.  The Trustee's reliance of the parol evidence rule is misplaced.

The Trustee fails to identify the allegations of the Counterclaim that would require submission of evidence in violation of the parol evidence rule, referring generally to "purported extra-contractual promises and representations" and "allegations about extra-contractual assurances and obligations."  Presumably, he attacks allegations that "the trustee and counsel repeatedly assured the Schneiders that the settlement would bring comprehensive finality to all of the claims raised in [AP 15-15] to the exclusion of all other creditors."  *See, e.g.,* ¶¶ 55, 61, 72.

Even without these allegations, however, the record in this case makes it clear that the Schneiders' entry into the Settlement Agreement was contingent on comprehensive finality.   Indeed, each of these allegations is followed by references to Section III of the Trustee's motion to approve the Settlement Agreement, in which he identified the "three additional orders from the Court" that "the Settlement Agreement requires the Trustee to seek," including the "finding of fact and conclusion of law that 'the causes of action asserted by the Trustee are all property of the bankruptcy estate, to the exclusion of any creditor.  These provisions are included in the Settlement Agreement.

Because the Court can ascertain the parties' intention from the Settlement Agreement and the Trustee's motion, the parol evidence rule is not implicated.  As the Trustee acknowledges, the rule applies to "statements [that] specifically contradict the language of [an] Agreement."   *Deschamps v. Treasure State Trailer Court, Ltd.,* 2010 MT 74, ¶ 28, 356 Mont. 1, 230 P.3d 800; see also Cleary v. News Corp., 30 F.3d 1255, 1263 (parol evidence rule "prohibits introduction of extrinsic evidence of a prior or

contemporaneous agreement which would *vary or contradict* the clear and unambiguous language in a contract") (citation omitted, emphasis added).

The Montana statute prohibits only "evidence of the terms of the agreement other than the contents of the writing."  Mont. Code Ann. § 28-2-905(1).  It specifies that the parol evidence rule "does not exclude other evidence of the circumstances under which the agreement was made or to which it relates," referring to § 1-4-102.  Mont. Code Ann. § 28-2-905(1).  The referenced statute in turn provides that, "[f]or the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument and of the parties to it, may also be shown so that the judge is placed in  the  position of those whose language the judge is to interpret."  Mont. Code Ann. § 1-4-102.

The record in this case demonstrates the circumstances under which the Settlement Agreement was made.  The Trustee was negotiating simultaneously with the Defendants regarding settlement of AP 15-15 and Meridian regarding the settlement of its claims.  It is no surprise that the Defendants expected that resolution of both matters would bind all parties, including Meridian.  When the Trustee opened the door for Meridian to claim exemption from enforcement of the Settlement Agreement by seeking shortened notice, he violated that Defendants' crystal clear expectations as related in the Settlement Agreement itself.

Given the terms of the Settlement Agreement and the surrounding circumstances, the allegations of the Counterclaim—even without reference to any oral assurances made by the Trustee or his counsel—are sufficient to state claims upon which relief can be granted.  This is the case not only with respect to the Trustee's misplaced

reliance on the parol evidence rule, but also with respect to his other arguments that the various Counts of the Counterclaim fail to state claims, discussed below.

### 3.  All Counts of the Counterclaim state claims upon which relief may be granted.

*Count I – Breach of Contract*

Count I alleges failure of consideration, asserting that the Trustee's actions in shortening notice of the Meridian Agreement deprived the Defendants of the material protections they negotiated.  Although Meridian and the Defendants ultimately settled their dispute, after the Counterclaim was filed, the dispute and its resolution caused Defendants to incur substantial attorney's fees.

The Trustee's contention that the Settlement Agreement "imposes no duty upon the Trustee to stop other parties from pursuing claims or asserting their claimed legal rights" is dead wrong.  The Settlement Agreement provides that "the causes of action asserted by the Trustee in [AP 15-15] are all property of the bankruptcy estate, to the exclusion of any creditor."  There is no construction of that provision that would allow another creditor to pursue the same causes of action settled by the Trustee, as Meridian did.  Meridian claimed it had the right to do so because it was not a "creditor."  The only reason Meridian could make this claim is that the Trustee shortened notice for approval of the Meridian Agreement.  He made a promise to the Defendants in the Settlement Agreement that his actions in connection with the Meridian Agreement may have negated.  In any event, Meridian's argument that withdrawal of its proof of claim exempted it from the Settlement Agreement allowed it to make that argument, and

damaged the Defendants by requiring them to expend funds to sue Meridian and resolve the issue by agreement. *See* n.1, *supra.*

The Trustee's actions also breached the implied covenant of good faith and fair dealing under Montana law. This covenant "requires 'honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.'" *Morrow*, ¶ 31, *quoting* Mont. Code Ann. § 28-1-211 (other citations omitted). Allegations that the Trustee's conduct deprived the Defendants of the benefit of the Settlement Agreement, by allowing Meridian to claim exemption from it, state a claim for breach of this implied covenant.

The Trustee's motion to dismiss Count I for failure to state a claim should be denied.

### Count II -- Negligence

The Trustee's contention that the Schneiders do not allege duty, an essential element of their negligence claim, is inaccurate. Paragraph 67 of the Counterclaim alleges that "[t]he failure of the trustee and/or counsel to consider, identify and disclose the risk of not binding Meridian was negligence, breach of the duty of care and breach of fiduciary duty to all creditors and parties in interest and the Schneider parties." The next paragraph alleges that the Defendants have been damaged as a result of the Trustee's breach. These paragraphs, together, allege all essential elements of a negligence claim under Montana law. *Morrow*, ¶ 33 (elements are duty, breach of that duty, causation and damages).

The Schneiders not only allege that the Trustee owed a duty to them, but also allege facts that support the existence of this duty.

First, the motion to approve the Settlement Agreement demonstrates that the Trustee undertook a specific duty to seek the "three additional orders from the Court," including "a finding of fact and conclusion of law that 'the causes of action asserted by the Trustee are all property of the bankruptcy estate, to the exclusion of any creditor."

Second, the Counterclaim's allegation that the Trustee failed to "consider . . . the risk of not binding Meridian" supports an inference of duty under Montana law.  The existence of duty depends primarily on the foreseeability of the harm to the injured party.  The Court examines whether "the injured party was within the scope of risk created by the alleged negligence of the tortfeasor—in other words, [the Court] ask[s] whether the injured party was a foreseeable plaintiff."  *Eklund v. Trost*, 2006 MT 333, ¶ 40, 335 Mont. 112, 151 P.3d 870.  The Defendants allege that the Trustee failed to anticipate the loophole his motion for shortened notice created for Meridian.  They thus allege that they were foreseeable plaintiffs under Montana law.

Finally, the Counterclaim alleges that the Trustee breached his "fiduciary duty to all creditors and parties in interest and the Schneider parties."  As discussed above, the Trustee owed fiduciary duties to the Defendants, as Debtor and creditor and parties to the Settlement Agreement.

The Trustee's motion for approval of the Settlement Agreement makes it plain, as does the agreement itself, that the preclusive effect on other parties was of paramount concern to the Schneiders.  The Trustee undertook the obligation to obtain a ruling to this effect and ultimately obtained such a ruling.  The Trustee was the only party in the case who could seek and obtain approval of the Settlement Agreement; thus, the Schneiders had to rely, and did rely, on his obtaining approval.  A subset of this reliance

was their reliance on his promise that the Settlement Agreement would bind all creditors—a promise that his shortened notice of the Meridian Agreement threatened.

In the Settlement Agreement, the Trustee undertook to obtain Court approval of the Settlement Agreement and to obtain an order containing specific terms.  The Defendants' consent to entry onto the Settlement Agreement was contingent on the Trustee's obtaining an order with the specific provisions they requested—including those at issue in this case.  The Settlement Agreement provided that their consent would be void if the order was not obtained.

These undertakings form the basis for an agency relationship under Montana law.   An agency is created "by a precedent authorization or a subsequent ratification." Mont. Code Ann. § 28-10-210.  The defendants in AP 15-15 authorized the Trustee to seek approval of the Settlement Agreement subject to specific terms, constituting precedent authorization.

When an agent fails to inform his principal of the legal risks of a transaction, he breaches his fiduciary duty, as an agent, under Montana law.  *Marie Deonier & Assocs. v. Paul Revere Life Ins. Co.*, 2004 MT 297, 323 Mont. 387, 101 P.3d 742.  The *Marie Deonier* Court affirmed the District Court's denial of the defendant's motion for judgment as a matter of law on the question whether failure to warn of litigation risk was a breach of fiduciary duty.  *Id.*, ¶ 28.  The Court also found that the plaintiff had presented sufficient evidence to the jury to support its finding that the agent had breached its fiduciary duty.  *Id.*, ¶ 27.

The question whether the Trustee owed a fiduciary duty to the Defendants is one of law, but this Court must conduct "a fact-intensive inquiry" to reach the legal

conclusion.   It cannot be said that the Defendants fail to state a claim on the question of fiduciary duty as a matter of law.

The Counterclaim adequately alleges duty, for all of the reasons stated above. "Once a duty has been established, the breach of that duty is a question of fact to be resolved by a jury" or other finder of fact.  *Morrow*, ¶ 33 (citations omitted).  The Trustee's motion to dismiss the Schneider's negligence claims should be denied.

<em>Count III – Negligent Misrepresentation</em>

The elements of a claim for misrepresentation are as follows:

> a) the defendant made a representation as to a *past* or *existing* material fact;
> b) the representation must have been untrue;
> c) regardless of its actual belief, the defendant must have made the representations without any reasonable ground for believing it to be true;
> d) the representation must have been made with the intent to induce the plaintiff to rely on it;
> e) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying upon the representation;
> f) the plaintiff, as a result of its reliance, must sustain damage.

*Morrow*, ¶ 45.  The Trustee's attack on the Schneiders' claim centers on the requirement of misrepresentation of *a past or existing material fact*, breaking it down into two components—whether the misrepresentation was of fact, and whether it concerned an "existing" fact.

The Trustee identifies too narrowly the misrepresentation that underlies the Defendants' claim.  Implicit in his agreement to obtain an order that would resolve the causes of action asserted in AP 15-15, against all parties, was the representation that the Trustee had done nothing to undermine this effect of the Order.  When he filed the motion to shorten notice on the Meridian Agreement, the day after filing the Settlement Agreement and the motion for its approval, he took action that allowed Meridian to

claim exemption from the Order. This is the circumstance that made his representation to the Defendants inaccurate as a matter of *fact*. Moreover, it was a misrepresentation as to an existing, not future, fact—*i.e.,* that he had done nothing to make the Order ineffective as against all parties, and knew of no reason why it would be ineffective as to any of them, including Meridian.

The Trustee need not have known that his representation was false. Count III is for *negligent* misrepresentation. Negligent misrepresentation concerns the failure "to exercise reasonable care or competence in obtaining or communicating" information. *Morrow*, ¶ 45. This cause of action requires "no intent to deceive but only good faith coupled with negligence." *State Bank of Townsend v. Maryann's, Inc.,* 204 Mont. 21, 33, 664 P.2d 295, 301 (1983). The question whether the defendant was negligent depends on the reasonableness of his actions under all of the circumstances, giving rise to a question of fact. *Id.* at 34-35, 664 P.2d 295, 301—02. The question is one for the trier of fact, and may not be decided on a motion to dismiss for failure to state a claim as a matter of law.

The Trustee's assertion that the Defendants did not rely on his misrepresentation is off base as well. First, he relies on the same argument that his misrepresentation was of the legal effect of the Order itself, while in fact the actionable misrepresentation related to his own actions, as discussed above. Second, under Montana law it is presumed that a party relied on a misrepresentation if he relied on it. *Thayer v. Hicks*, 243 Mont. 138, 152, 793 P.2d 784, 793 (1990). The Court in *Thayer* approved a jury instruction to that effect, and explained that the initial burden on the plaintiff is "to prove that misrepresentations have been made, that they were material and that [they] had taken action upon them." *Id.* The Defendants have alleged the materiality of and

their reliance on the Trustee's misrepresentation.  CC, ¶¶ 74, 76.  This meets their burden, giving rise to an obligation on the Trustee's part "to prove that [they] did not act upon [his] representations."  *Thayer*, 243 Mont. at 152, 793 P.2d at 793.  He cannot meet this burden in the context of a motion to dismiss for failure to state a claim.

For these reasons, the Trustee's motion to dismiss must fail as to Count III.

*Count IV – Fraudulent Inducement*

The Trustee's motion to dismiss must fail as to Count IV for essentially the same reasons discussed above respecting Count III.  He argues that the alleged misrepresentation related to a future event—Meridian's claim of exemption from the Order approving the Settlement Agreement—but this argument reflects his misunderstanding of the misrepresentation.  Underlying his agreement to seek the provision that the Settlement Agreement would resolve all of the claims in AP 15-15 to the exclusion of all creditors was a representation that he would not, simultaneously, take steps that would enable Meridian to withdraw its claim before entry of the Order approving the Settlement Agreement.

His related argument that the Defendants' claim impermissibly is based on future acts of a third party also misses the point.  When he filed the motion to approve the Settlement Agreement, the Trustee already knew that Meridian would withdraw its claim, because that was a term of the Meridian Agreement, which he filed the same day.

The Defendants have served discovery requests on the Trustee to determine whether he knew that Meridian would use the excuse of withdrawal of its proof of claim to assert that the Order approving the Settlement Agreement does not apply to Meridian, and whether he agreed to seek shortened notice to this end.  Even without responses to these discovery requests, the Counterclaim alleges sufficient facts to

overcome the Trustee's Motion.  However, Defendants also suggest that ruling on the Motion as it relates to Count IV would be premature, and should await the results of the discovery.

## CONCLUSION

The Trustee's arguments cannot stand up to the authority cited in this brief. Plaintiffs' Complaint states valid claims upon which this Court may grant relief.  The Motion should be denied.

Dated: September 21, 2017                          /s/ James H. Cossitt

                                                  James H. Cossitt (Mont. # 4773)

Original filed via ECF

**Pursuant to FRBP 7005 & 9014 (b) and FRCP 5(b)(2)(D) all parties noted in the Court's ECF transmission facilities have been served via ECF.**

**The following have been served by mail:**   none


### CERTIFICATE OF SERVICE BY MAIL /  ECF

This document was served pursuant to FRBP 7004, 9001(8), 9013, 9014(b):  1) by mail, in envelopes addressed to each of the parties at the addresses above; and/or  2) by electronic means, pursuant to LBR 7005-1, 9013-1(d) and 9036-1 on the parties noted in the Court's ECF transmission facilities, on September 21, 2017.  The undersigned declares, under penalty of perjury pursuant to 28 USC § 1746, that the foregoing is true and correct.


/s/ James H. Cossitt

L:\Clients\JHC\Schneider\17-21 - TT v. S\d\2017-09-08 - JS Object MTD.docx
Revised   9/21/2017 17:53